50 CCPA

**Application of Howard B. LEWIS, Jr.**

**Patent Appeal No. 6987.**

United States Court of Customs and Patent Appeals.

June 20, 1963.

C. Russell Hale, Edward J. DaRin, Christie, Parker & Hale, Pasadena, Cal., for appellant.

Clarence W. Moore, Washington, D. C. (Jere Sears, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

WORLEY, Chief Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the rejection of claims 13 through 18 of appellant's application [1] entitled "Air Dead Weight Tester." Four claims were allowed.

Claim 13 is representative and reads:

"13. A portable automatic dead weight tester comprising a base, a piston-cylinder assembly mounted on said base, said assembly being arranged to allow relative rotary motion between said piston and cylinder and having the cooperating surfaces thereof sufficiently polished and spaced within micro-inches of each other to permit the creation of a gas bearing when said piston and cylinder are rotated relative to each other and a gas under pressure is introduced between said cooperating surfaces, the piston of said assembly being a single cylindrical piston for slidably closing an end of the cylinder and extending outwardly from the cylinder, means mounted on said base producing relative rotary motion between said piston and cylinder upon actuation thereof, means for actuating the rotation producing means, means for admitting a gas under pressure into the cylinder to bear against the inner end of the piston and pass between the cooperating surfaces of the piston and cylinder, and means to load the piston in opposition to the pressure exerted against its inner end by the admitted gas."

Claim 15 additionally includes the recitation of a limit stop for limiting upward travel of the piston while claim 18 specifies the enlarged lower cylinder core discussed hereinafter.

The references are:

Collette    1,134,316    April 6, 1915.
Grant    2,719,431    October 4, 1955.
Product Engineering, Aug. 1951, pages 112–115.
Mechanical Engineer's Handbook, (Fifth Edition) by L. S. Marks, pages 902–904.

1. Serial No. 587,654, filed May 29, 1956.

Appellant's invention relates to a piston-and-cylinder type of dead weight tester which is useful as a standard for pressure measurements. A piston having known effective area and weight and arranged to selectively receive known weights is adapted to exert a calculable reference pressure on a captive test medium. In one form, the tester includes a cylinder having a stepped bore consisting of a relatively large lower bore communicating with a smaller upper bore which slidably receives the piston. A skirt is secured to the piston outside the cylinder and is adapted to be driven by a motor to rotate the piston with its weights thereon at a predetermined speed. Gas or air under pressure is admitted to the large bore of the cylinder and slowly escapes by passing between the cooperating surfaces of the small bore and the piston and out of the tester. The drive for rotating the piston is through a centrifugal clutch which disengages when a desired speed is attained and permits the piston to continue rotating for a time thereafter without any restraint. It is during that period, when the piston is rotating freely, that the calculated effective weight of the piston and weights is treated as indicative of the actual pressure of the gas in the cylinder.

The Collette patent discloses a dead weight tester for use in calibrating gages. In that patent an upright cylinder receives a piston for axial and rotational movement within the upper part of its bore. On the upper end of the piston, which extends outside the cylinder, a table for selectively receiving standard weights is mounted. The table carries peripheral vanes against which a fluid is directed by a nozzle to cause rotation of the piston. A fluid, which may be air, is forced into the cylinder from a pump "with the result that the plunger [piston] * * * is moved upwardly in the cylinder * * * until said piston is floated or supported solely by said fluid." Collette further states that "It is essential during the operation of the dead weight tester that the table * * *

be rotated for by so doing the plunger * * * will be more sensitive * * *."

Collette also provides means for operating a control valve to cause an increase in pressure of the fluid forced into the cylinder when additional weights are placed on the table to provide a different known weight. That means includes a valve actuated by a lever which is engaged by the under-face of the table as the latter lowers in response to additional weight being placed upon it.

Grant discloses a dead weight tester generally similar to those of appellant and Collette. It includes a weighted and rotatable plunger or piston extending down through a smaller bore of a cylinder into an enlarged bore of the cylinder. The plunger exerts a calculable pressure on air forced into the cylinder to permit testing a pressure gage.

The article from Product Engineering relates to air lubricated bearings, describing some structures and discussing theory of operation. The author states that "in such bearings, part of the support comes from hydro-dynamic wedge action, but the greater share results from eccentricity alone." He also refers to a pneumatic bearing of the journal type which is one and one-eighth inches in diameter, two and one-half inches long with a clearance of 0.001 inch. Further reference is made to a journal bearing 3 inches in diameter which can be fed with either air or oil as the lubricant, pointing out that "by the simple expedient of feeding with either air or oil a bearing can be made to work successfully over an extremely wide speed range."

The cited pages of the Marks Handbook set out clearance allowances for various machine parts including allowance for a "Medium fit (class 3)" for running and sliding fits employed in accurate machine-tools. It shows that such fits may have a clearance allowance ranging from 2 to 34 ten-thousandths of an inch (from 200 to 3400 micro-inches) for shaft diameters of 9/16 inch to 2⅛ inches, respectively.

The examiner rejected claims 13 through 17 on Collette in view of Product Engineering and Marks, and claim 18 on the same references further in view of Grant. It was his position that Collette meets the limitations in the claims which do not specify the limit stop or the enlarged lower cylinder bore. Basically, the examiner relied on the Product Engineering article and the Marks Handbook as clarifying Collette. However, the examiner alternately took the position that, even if Collette does not meet the limitations relating to an air bearing, it would be obvious to substitute a suitable air bearing between Collette's piston and upper cylinder bore in view of the Product Engineering article and in view of appellant's admission, apparently in his brief before the board, that air bearings per se were known in the art prior to his filing date. The examiner relied on Marks Handbook as indicating that a rotatable sliding fit involves micro-inch tolerances.

The provision of a limit stop, as set out in claim 15, was regarded by the examiner as an obvious expedient. He regarded the provision of an enlarged cylinder at the bottom of the cylinder, recited in claim 18, in the Collette tester to be obvious in view of Grant.

In affirming the rejection, the board expressly incorporated the examiner's Answer in its opinion.

Appellant bases his contention for patentability on the position that the appealed claims are directed to "the broad definition of a dead weight tester having a piston and cylinder combination that is relatively rotatable and is separated by a dynamically created air or gas bearing during calibration periods." He contends that it would not be obvious to employ an air bearing in Collette, urging in support of that contention that his own structure operated with an air bearing provides an unexpected improvement in accuracy.

Several statements in the application are relied on as pertinent to the use of an air bearing effect. Thus, in referring to the rotating of the piston assembly, the application states:

" * * * Upon reaching the desired speed, the motor is turned off, the clutch disengages, and the piston assembly rotates free of any constraint except the viscous friction of the gas."

The application also states:

"The piston rod * * * and the small diameter bore * * * of the cylinder are carefully honed to a fine tolerance, the clearance between the two being approximately 40 microinches. * * *

* * * * * *

" * * * Rotation of the piston assembly is initiated by energizing motor * * *, the motor being shut off so as to disengage the clutch after a predetermined r.p.m. is achieved. * * * A continuous rotation [of the piston] during a measurement is necessary to minimize friction. This can be done manually as the unit will coast for in excess of 30 seconds upon an initial rotary impulse, but preferably it is accomplished by a motor and clutch arrangement, * * *."

In referring to a modified construction where the piston is inclined to the vertical, the application makes its only specific reference to an air bearing in the following:

" * * * The side loading of the piston resultant on the inclination thereof from vertical, [sic] necessitates an increase in the r.p.m. of the piston necessary to establish the required air bearing. However, once the air bearing is established the effects of side loading are eliminated. * * *"

The examiner expressly "admits that the exact nature of the cooperating surfaces of the piston * * * and the cylinder * * * as to the degree of polish, tolerances, and spacing is not disclosed by the Collette patent nor is there any disclosure that lubrication of

any type exists between the cooperating surfaces." He asserts, however, and we agree, that it is immaterial that Collette does not state that the air test fluid acts as a lubricant if, in fact, it does. Also, it seems clear that a person of ordinary skill in this art would recognize that Collette employs a rotatable sliding fit and would consider Marks Handbook as authority that clearance allowances of 200 to 3400 microinches are used for such fits in accurate machine tools for shaft diameters of $\frac{3}{16}$ to $2\frac{1}{8}$ inches. It thus seems reasonable to us that a mechanic with the Collette patent before him and the knowledge of clearance allowances set out in Marks Handbook would space the Collette piston and cylinder "within micro-inches of each other," as recited in the claims. Certainly such mechanic, making a tester in accordance with Collette's disclosure, would realize the obvious desirability of low friction between those parts and would provide them with a polish commensurate with the state of the art. We find nothing in the record to demonstrate error in the position taken by the examiner that "It would appear that a fit on the order of .001 inch [one thousand microinches] would be 'sufficiently polished' to establish an air bearing." Further, that statement appears to find specific support in the reference to "A clearance of .001 in." in the Product Engineering article referring to air bearings.

With regard to the term "to permit the creation of a gas bearing" used in the claims in connection with the reference to the polishing and spacing of the piston and cylinder, it is significant that the claims do not specify the clearance of "approximately 40 micro-inches" which the application states is provided, or any other number of microinches. Thus, the claims do not define structurally over the spacing of "micro-inches" which a mechanic would certainly employ in Collette, particularly if he were following the disclosure of that patent at a time just preceding appellant's filing date, when the art of polishing and di-

mensioning of elements was so far advanced that appellant himself saw no need to describe any particular procedure in his application for obtaining the polish and clearance he specified.

The claims do not purport to define a structure which necessarily operates on the air-bearing principle, but only one that can be operated in such a manner as to provide an air bearing. In his petition for reconsideration before the board, appellant urged:

"The Primary Examiner has taken the position * * * that the Collette patent *inherently* includes the necessary structure called for in the appealed claims in response to Applicant's arguments that Collette did not intentionally include a gas bearing in his instrument. *It is entirely within the realm of possibility that an air bearing could be created with the Collette structure,* however, it should be noted that Applicant's device can be operated in the mode of the Collette disclosure, namely without a gas bearing, and this mode of operation is with a structure that was intentionally designed and constructed for the sole purpose to create a gas bearing. * * *" (Second emphasis supplied).

It seems clear to us that Collette not only inherently meets in terms the structural limitations of the claims relative to the piston and cylinder relationship but that the reference to that structure "to permit the creation of a gas bearing" is of no avail to appellant. It appears also from the record that one following the Collette disclosure in accordance with the knowledge of the art at a time prior to appellant's application would provide such a fit of the piston and cylinder as would inherently *permit* operation of an air bearing. In fact, appellant himself specifically recognizes in the above quotation that such operation is a possibility. Collette thus teaches everything the claim requires as to the relationship of the piston and cylinder.

Other features, such as the limit stop of claim 15 and the enlarged bore of the bottom portion of the cylinder, as specified in claim 18, apparently are not relied on as of patentable significance by appellant. In any event, we agree with the examiner that those features are obvious.

Consideration has been accorded the Myers affidavit which includes allegations of improved results and commercial success. That appellant has made a patentable invention is recognized by the allowed claims. However, we are convinced that the appealed claims do not reflect anything more than would be expected from one of ordinary skill in this art at the time the invention was made.

The decision is affirmed.

Affirmed.